## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Michael S.,

        Plaintiff,

v.

Nancy A. Berryhill, Acting Commissioner
of Social Security,

        Defendant.

Case No. 17-cv-5586 (TNL)

**ORDER**

---

Karl E. Osterhout, Osterhout Disability Law, LLC, 521 Cedar Way, Suite 200, Oakmont, PA 15139 & Edward C. Olson, Disability Attorneys of Minnesota, 331 Second Avenue South, Suite 420, Minneapolis MN 55401 (for Plaintiff); and

Bahram Samie & Tracey Wirmani, Assistant United States Attorneys, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis MN 55415 (for Defendant).

---

## I.   INTRODUCTION

Plaintiff Michael S. challenges Defendant Commissioner of Social Security's denial of his application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381. The parties have consented to a final judgment from the undersigned United States Magistrate Judge in accordance with 28 U.S.C. § 636(c) and D. Minn. LR 7.2. This matter is before the Court on the parties' cross motions for summary judgment. For the reasons set forth below, the Court denies Plaintiff's motion and grants Defendant's motion.

## II. BACKGROUND

### A. Procedural History

Plaintiff filed an action for SSI on April 21, 2014, alleging a disability onset date of the same day. Plaintiff alleges impairments of: anti-social personality disorder, bi-polar disorder, borderline intellectual functioning, anxiety, and sleep apnea. Plaintiff was found not disabled on September 16, 2014. That finding was affirmed upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on December 7, 2016 and, on January 6, 2017, the ALJ issued a decision denying Plaintiff's claim for benefits. Plaintiff sought review of the ALJ's decision through the Appeals Council, which denied his request for review. Plaintiff now seeks review by this Court.

### B. Administrative Hearing and ALJ Decision

The ALJ found that Plaintiff had the severe impairments of: anti-social personality disorder, bipolar/cyclothymic disorder, and borderline intellectual functioning. (Tr. 13). The ALJ further found and concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (Tr. 13-14). The ALJ considered Listings 12.02 (neurocognitive disorders), 12.04 (depressive, bipolar, and related disorders), and 12.08 (personality and impulse control disorders). (Tr. 13-14). Following this, the ALJ found Plaintiff to have the residual functioning capacity ("RFC") to perform a full range of work at all exertional levels, but with the following non-exertional limitations:

> moderate noise level; limited to performing simple, routine and
> repetitive tasks and using judgment is limited to simple worker
> related decisions; contacts with coworkers, supervisors, and
> the general public would be brief and superficial such that work
> is rated no lower than 8 on people scale of appendix B to
> Dictionary of Occupational titles, 1991 revised edition; work
> could be learned in one month; and performance of job duties
> in ordinary course would not provide ready access to alcohol
> or controlled substances.

(Tr. 15). The ALJ then concluded Plaintiff had no past relevant work, but that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 22-23). In particular, the ALJ determined that Plaintiff could work as a general cleaner, kitchen helper, and night cleaner. (Tr. 23). Accordingly, the ALJ found that Plaintiff was not disabled since April 21, 2014. (Tr. 23).

## III.  ANALYSIS

### A.  Legal Standard

Disability benefits are available to individuals who are determined to be under a disability. 42 U.S.C. §§ 423(a)(1)(E), 1381a; *accord* 20 C.F.R. §§ 404.315, 416.901. An individual is considered to be disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less" than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a). This standard is met when a severe physical or mental impairment, or impairments, renders the individual unable to do his or her previous work or "any other kind of substantial gainful work which exists in the national economy" when taking into account his or her age, education, and work

experience. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also* 20 C.F.R. § 404.1505(a).

Disability is determined according to a five-step, sequential evaluation process. 20 C.F.R.

§§ 404.1520(a)(4), 416.920(a)(4). The ALJ must consider whether:

> (1) the claimant was employed; (2) she was severely impaired; (3) her impairment was, or was comparable to, a listed impairment; (4) she could perform past relevant work; and if not, (5) whether she could perform any other kind of work.

*Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (citing 20 C.F.R. §§ 404.1520(a)(4),

416.920(a)). In general, the burden of proving the existence of disability lies with the

claimant. *Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991); 20 C.F.R. § 404.1512(a);

This Court reviews whether the ALJ's decision is supported by substantial evidence

in the record as a whole. 42 U.S.C. § 405(g); *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th

Cir. 2011) (citing *Harris v. Barnhart*, 356 F.3d 926, 928 (8th Cir. 2004)). "Substantial

evidence means less than a preponderance but enough that a reasonable person would find

it adequate to support the decision." *Boettcher*, 652 F.3d at 863 (citing *Guilliams v.

Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)). This standard requires the Court to "consider

the evidence that both supports and detracts from the ALJ's decision." *Perks v. Astrue*, 687

F.3d 1086, 1091 (8th Cir. 2012) (citing *Ellis v. Barnhart*, 393 F.3d 988, 993 (8th Cir.

2005)).

The ALJ's decision "will not [be] reverse[d] simply because some evidence

supports a conclusion other than that reached by the ALJ." *Perks*, 687 F.3d at 1091 (citing

*Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)). "If, after reviewing the record, the

court finds it is possible to draw two inconsistent positions from the evidence and one of

those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ. *Hilkemeyer v. Barnhart*, 380 F.3d 441, 445 (8th Cir. 2004); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993). Likewise, courts "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Pelkey*, 433 F.3d at 578 (quotation omitted).

**B. Factual Background**

For several years, Plaintiff has lived off and on at Horizons Homes, a program that provides residential services to adults who have been diagnosed with a serious and persistent mental illness and who require mental health services. (Tr. 405, 469, 754, 903). Treatment notes indicate that he moved in there for the fourth time on April 11, 2013, after he decided to stop living with this sister because he did not have enough privacy and because he found her annoying. (Tr. 405). He also returned to Horizon Homes in February 2014 because his sister had been taking advantage of him and living with her had become a negative situation. (Tr. 469, 471, 608).

When Plaintiff presented for assessment for admission to Horizon Home's Intensive Residential Treatment Services (IRTS) in February 2014, staff noted that he appeared "slightly disheveled," and that his "mood fluctuations . . . , mania, euphoria, and depressive symptoms" affected his ability to maintain a job and live successfully for extended periods of time both independently and in a supervised setting. (Tr. 390). Staff further noted that he would benefit from services intended to teach him coping skills, budgeting, relapse

prevention, and symptom management. (Tr. 390). In a subsequent evaluation in May 2014, staff noted that Plaintiff "decompensated" and became "more symptomatic" when his services were decreased. (Tr. 393). Staff also noted that his "learning disability prevented him from being able to maintain stable employment" and that Plaintiff required assistance scheduling medical and dental appointments. (Tr. 394-95).

Plaintiff has held multiple jobs during the time he was in and out of Horizon Homes. For a period of time, he worked at the Number Four restaurant, though he struggled there because he would often stay after his shift and drink. (Tr. 340). His manager reported, however, that Plaintiff was a good employee. (Tr. 980). Plaintiff ultimately left that job after missing multiple shifts; it appears that he decided to quit working there.

In January 2016, Plaintiff began working as a dishwasher for the Old Country Buffet. (Tr. 748). Nearly two months after he began working there, he moved out of Horizon Homes and found his own place, without any assistance or guidance. (Tr. 927). Staff from Horizon Homes, however, continued to meet with him regularly to ensure that he kept up on basic hygiene and bills. (Tr. 929, 931, 933, 934, 940). Plaintiff enjoyed working at the Old Country Buffet and indicated that he suffered limited anxiety while at work; his manager indicated that Plaintiff was such a good worker that he would "clone" Plaintiff if he could. (Tr. 1085). During the time he was at Old Country Buffet, Plaintiff purchased a car (Tr. 734) and helped his sister clean her trailer. (Tr. 898).

Plaintiff lost his job with the Old Country Buffet when it closed. (Tr. 744-45). After Plaintiff lost his job with Old Country Buffet, he moved back into Horizon Homes. (Tr. 754). He told staff that after he left Horizon Homes, everything "went to s***" and that he

needed assistance keeping track of appointments. (Tr. 949). Plaintiff also indicated that he returned to Horizon Homes because he needed to "get back on his feet" and become "more stable emotionally." (Tr. 903). He stated that he moved back there because he struggled to care for himself and manage his finances and because he had been abusing narcotics. (Tr. 754). It does not appear that Plaintiff has held a consistent job since the Old Country Buffet closed. He has, however, looked for employment elsewhere. (Tr. 948, 955).

Plaintiff has a structured routine when living at Horizon Homes, though with some degree of independence. He wakes up between 6:00 a.m. and 8:00 a.m. (Tr. 299). He eats breakfast at approximately 9:00 a.m. and lunch between 11:30 a.m. and 12:30 p.m. (Tr. 299). He participates in group activities throughout the day and watches television. (Tr. 299). He enjoys playing catch and reading and attends worship services and singles groups. (Tr. 303, 1030). He does not prepare his own meals, but is responsible for certain chores, including cleaning the windows and vacuuming. (Tr. 301). He also spends time with his mother, cares for his mother's dog, and interacts with his daughter and grandson. (Tr. 14, 19, 603, 912, 917, 956, 1030). Though he testified that he required some assistance with his medication and budgeting (Tr. 71-73), he previously stated that he is able to handle those matters on his own. (Tr. 301-02). His treatment providers at Horizon Homes indicate that Plaintiff requires assistance in making decisions and requires the support of others to assist him. Plaintiff's Horizon Homes counselor, Ricki Pribyl, twice filled out a Group Residential Housing – Professional Statement of Need. Each time, she indicated that Plaintiff had a permanent mental illness that limited his ability to work and provide for himself. (Tr. 1133, 1136).

Plaintiff has also met with multiple treatment providers over the past several years. Between 2005 and 2014, Plaintiff met with his psychotherapist, Kenneth Martens, who routinely noted that Plaintiff appeared to be in good health and that, for the most part, his medications helped him remain calm and stable. (Tr. 449, 462-65, 467-78, 481-84, 486-500). Martens further indicated that Plaintiff exhibited poor judgment and struggled with alcohol abuse. (Tr. 491-92, 497). Martens indicated in treatment notes in April 2014 that Plaintiff was frustrated with staff who wanted him to find employment because he felt that he was "not stable enough" to keep a steady job. (Tr. 466). Martens indicated that he "tend[ed] to agree with him." (Tr. 466). Martens based his conclusion on Plaintiff's "mental capacity." (Tr. 466).

Martens completed a "Mental Medical Source Statement" regarding Plaintiff in July 2014. (Tr. 501-04). There, he noted that Plaintiff had "extreme" limitations regarding his ability to complete a normal work day or week, interact with the general public, ask questions or receive assistance, and accept questions and respond appropriately to criticism from supervisors. (Tr. 502). He also indicated that Plaintiff had "marked" limitations regarding his ability to understand, carry out, and remember detailed instructions, work in coordination with or in close proximity to others, respond appropriately to changes in the work setting, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, be aware of normal hazards and take appropriate precautions, travel in unfamiliar places or use public transportation, set realistic goals or make plans independently of others, and tolerate normal levels of stress. (Tr. 502). Martens further observed that Plaintiff would have moderate limitations regarding his ability to remember

work-like procedures and locations, understand and remember very short and simple instructions, maintain concentration attention for more than two-hour segments, perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerance, make simple work-related decisions, and ask simple questions or request assistance. (Tr. 502). Martens did indicate, however, that Plaintiff had no or only mild limitations in his ability to carry out short and simple instructions. (Tr. 502).

Martens then concluded that Plaintiff had antisocial personality and intellectual limitations. (Tr. 502). He stated that Plaintiff would require unscheduled breaks during an 8-hour work day "to get away." (Tr. 503). Martens further estimated that Plaintiff would require more than 3 days a month off as a result of his impairments or to obtain necessary medical treatment. (Tr. 503). He also noted that though Plaintiff had a history of abusing alcohol, he would still consider Plaintiff impaired even if Plaintiff abstained from the use of it. (Tr. 503-04). In that evaluation, Martens assigned Plaintiff a GAF score between 35 and 45. (Tr. 501).

Plaintiff also saw Rebecca Moore, a nurse practitioner employed by Blue Earth County Human Services ("BEHS"), on a regular basis. Her April 16, 2014 treatment notes indicate that Plaintiff benefitted from his medication, that his mood was "congruent" and that his thought process was clear, logical, and goal-orientated. (Tr. 609). She further indicated that his attention and concentration appeared to be intact. (Tr. 609). Finally, she noted that Plaintiff's mood was "euthymic." (Tr. 609). Moore made similar observations regarding her July 7, 2014, August 27, 2014, October 6, 2014, December 3, 2014, and May 7, 2015 visits with Plaintiff. (Tr. 559, 598, 603, 614, 714). Moore also noted repeatedly

that Plaintiff's medication helped keep his symptoms in remission and improve his mood but noted that he struggled occasionally with grooming and his temper. (Tr. 530-31, 537, 598, 603, 723). Moore also indicated in her May 2015 notes that Plaintiff had been unable to obtain "work at the necessary pace" to retain employment at his current position but stated that she had brainstormed with him for ideas for other positions that he could seek. (Tr. 714). Moore also noted that Plaintiff's case manager encouraged him to seek out part-time employment. (Tr. 714). Moore repeatedly assigned Plaintiff a GAF score of 60. (Tr. 507, 512, 524).

On a couple of occasions, Plaintiff also saw nurse practitioner Debra Sowers when he visited BEHS. In treatment notes signed October 26, 2015, Sowers observed Plaintiff's mood to be euthymic, his thought process to be logical and coherent, and his attention and concentration to be intact. (Tr. 718-19). She made similar observations in treatment notes dated November 30, 2015. (Tr. 724).

In addition, Plaintiff also met with Marlae R. Cox-Kolek, a counselor from Mankato Mental Health Associates. In her initial diagnostic assessment, which occurred in September 2015, she stated that, absent a structured living environment, Plaintiff would experience a "relapse of symptoms." (Tr. 881). Cox-Kolek further indicated in her assessment that Plaintiff required "support and assistance in all areas" because of his lack of family support, including assistance with his medication. (Tr. 881). She observed later, at appointments in April, May, and August 2016, that Plaintiff's mood was euthymic, his functional status intact, his cognitive functioning was alert and orientated, and that his "interpersonal" was interactive. (Tr. 894, 898, 900). Some of these observations were made

at times that Plaintiff was living on his own and working at the Old Country Buffet. Cox-Kolek indicated in December 2016 that Plaintiff would be unable to work more than four hours a day. (Tr. 1134).

In evaluating Plaintiff's initial disability claim, state consultant Dr. Joseph Cools assessed Plaintiff's personality disorders, borderline intellectual functioning, and anxiety disorders as severe. (Tr. 155). In looking at the "B" Criteria of the listings, Dr. Cools noted that Plaintiff had moderate difficulties in maintaining social functioning and concentration, persistence, and pace and that Plaintiff had mild restriction of activities of daily living. (Tr. 156). Dr. Cools further noted that Plaintiff had no repeated episodes of decompensation. (Tr. 156). In assessing Plaintiff's RFC, Dr. Cools indicated that Plaintiff's ability to carry out short and simple instructions, perform activities within a schedule, be punctual, and maintain regular attendance was not significantly limited. (Tr. 158). He reached the same conclusion regarding Plaintiff's ability to sustain an ordinary routine without special supervision, to work in close proximity with others, and to complete a normal day and workweek without interruption. He did indicate, however that Plaintiff had moderate limitations regarding his ability to interact generally with the public and to get along with co-workers without distracting them or exhibiting behavioral extremes. (Tr. 159). Dr. Cools further opined that Plaintiff "is able to relate adaptively to others. He would behave in a socially appropriate manner in a low stress [setting] (e.g., limited contacted with the general public, non-confrontational atmosphere, quiet environment). [Plaintiff] would likely be able to tolerate a normal work schedule." (Tr. 159).

In evaluating Plaintiff's disability claim on reconsideration on May 6, 2015, state consultant Dr. Mark Berkowitz also assessed Plaintiff's personality disorders, borderline intellectual functioning, and anxiety disorders as severe. (Tr. 173). Like Dr. Cools, Dr. Berkowitz concluded, regarding the "B" Criteria of the Listings, that Plaintiff had moderate difficulties in maintaining social functioning and concentration, persistence, and pace, that Plaintiff had mild restriction of activities of daily living, and that Plaintiff had no repeated episodes of decompensation. (Tr. 174). Dr. Berkowitz further affirmed Dr. Cools's RFC assessment of Plaintiff, including his conclusion that Plaintiff would be able to tolerate a normal work schedule. (Tr. 178).

### C. Plaintiff's Need for Structured Living Environment

Plaintiff first argues that the ALJ erred by failing to consider that his "level of mental functioning was occurring in the context of a supported environment" when assessing his limitations. (ECF No. 18, p. 4). Plaintiff asserts that though the ALJ accepted the fact that he lived in a supportive environment, the ALJ failed to consider properly this factor's significance and relied on this factor inappropriately to conclude that that Plaintiff experienced only mild difficulties in activities of daily learning and moderate difficulties in concentration, persistence, and pace and social functioning. Defendant argues that the ALJ's determination is adequately supported by the record.

It is well established that an RFC assessment must be based on all of the relevant evidence in the record, including a person's "[n]eed for a structured living environment." SSR 96-8p, 1996 WL 374184 (July 2, 1996). And it is apparent from his decision that the ALJ considered Plaintiff's need for structured living accommodations in assessing his

RFC. The ALJ noted that Plaintiff needed assistance with his medications and finances, as well as with certain day-to-day tasks, including those related to hygiene. (Tr. 15, 17, 18). The ALJ further noted that though Plaintiff struggled with alcohol abuse, relapses had been "sporadic" since his application date and that he usually demonstrated fair insight and judgment and a goal orientated thought process. (Tr. 17). The ALJ also found that Plaintiff had success with unskilled jobs, citing to his work at the Old Country Buffet, the fact that he performed household chores while living at Horizon Homes, and his assisting family members with repairs. (Tr. 19). Based on the "totality of the evidence," the ALJ found that Plaintiff possessed the RFC to perform a full range of work at all exertional levels, but with significant non-exertional limitations. (Tr. 22).

The ALJ's conclusion is well-reasoned. Though it is apparent from the record that Plaintiff benefits from placement in a structured living environment, it is equally apparent that the ALJ took that environment into consideration when determining Plaintiff's RFC. As Defendant notes, Plaintiff identifies no specific limitations that the ALJ should have further accounted for based on his living environment. The ALJ acknowledged the supported living services that Plaintiff received and discussed those services along with Plaintiff's previous work history, activities that he participated in both while he lived at Horizon Homes and elsewhere, and treatment notes regarding Plaintiff's mood, affect, hygiene, energy level, memory, and attention. *Cf. Boeser v. Colvin*, No. 12-cv-1651, 2013 WL 12142543 *28 (D. Minn. Sept. 17, 2013) (noting that ALJ framed an appropriate hypothetical question because ALJ acknowledged and discussed supported living services and part-time work). In making this assessment, the ALJ focused heavily on the fact that

Plaintiff worked successfully at the Old Country Buffet until it closed, both while he lived at Horizon Homes and elsewhere. The ALJ further considered the extent to which Plaintiff's medication assisted him, as well as the fact that Plaintiff required assistance in taking that medication. Based on those findings, the ALJ determined that Plaintiff was capable of simple, unskilled work. The Court concludes that the ALJ's findings are supported by substantial evidence.

Plaintiff next argues that the ALJ's decision is erroneous because the ALJ failed to explain why he did not consider evidence documenting his supported functioning. He further contends that in doing so, the ALJ erred by failing to explain, under step five of the disability analysis, whether Plaintiff could only be expected to handle accommodated work.

Plaintiff's argument is without merit. The ALJ found, in determining Plaintiff's RFC, that he was capable only of performing simple, routine, and repetitive tasks that required limited judgment. Describing a claimant as "capable of doing simple, repetitive, routine tasks adequately accounts for" non-exertional impairments. *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) (concluding that describing a claimant as capable of doing only simple work adequately accounts for borderline intellectual functioning). And the ALJ's question to the vocational expert adequately covered Plaintiff's limitations, as the ALJ asked the vocational expert a series of questions that limited the claimant to simple, repetitive tasks, with simple work-related procedures. *See Green v. Astrue*, 390 Fed. App'x 620, 621 (8th Cir. 2010) (finding that a similar question encompassed borderline intellectual functioning). Plaintiff essentially asks the Court to reweigh the evidence and

order the ALJ to place greater weight on certain factors. This Court will not do so. *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006). In short, while there is evidence in the record to suggest Plaintiff has certain limitations in his day-to-day living, there is also evidence to show these limitations do not prohibit Plaintiff from obtaining the type of work described by the ALJ's RFC analysis. As a result, the Court concludes that the ALJ's decision is supported by substantial evidence.

### D. Treating Specialist Opinion

Plaintiff next argues that the ALJ erred by failing to give appropriate reasons for rejecting the opinion of Martens, his treating psychotherapist. Under 20 C.F.R. § 404.1527(c) or § 416.927(c), medical opinions from treating sources are weighed using several factors: (1) the examining relationship; (2) the treatment relationship, such as the (i) length of the treatment relationship and frequency of examination and the (ii) nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors. If a treating source's medical opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," it is given controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Treating sources include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. §§ 404.1502(a), 416.902(a). "A treating physician's opinion that a claimant is disabled or cannot be gainfully employed gets no deference because it invades the province of the Commissioner to make the ultimate disability determination." *House v. Astrue*, 500 F.3d

741, 745 (8th Cir. 2007). An ALJ "may give a treating doctor's opinion limited weight if it provides conclusory statements only." *Samons v. Astrue*, 497 F.3d 813, 818 (8th Cir. 2007) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1494 (8th Cir. 1995)). Additionally, "[a] treating physician's own inconsistency may . . . undermine his opinion and diminish or eliminate the weight given his opinions." *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)).

The ALJ evaluated the opinions of Martens, Moore, Pribyl, Cox-Kolek, and the two state consultants before rendering his decision. Regarding Martens, the ALJ focused primarily on his April 2014 notes and his July 2014 Mental Medical Source Statement. (Tr. 21). The ALJ afforded little weight to Martens's April 2014 notes, stating that his conclusions in those notes were inconsistent with Plaintiff's activities of daily living, mental status exams, and success that Plaintiff obtained while working as a dishwasher. (Tr. 21). The ALJ further noted that intelligence testing determined that Plaintiff had borderline intellectual functioning, as opposed to an intellectual disability. (Tr. 21). The ALJ also placed little weight on Martens's July 2014 Mental Medical Source Statement. The ALJ explained that this statement was inconsistent with Martens's own treatment notes and the notes of other treating providers, Plaintiff's "activities of daily [living] and mental status exams," and his work as a dishwasher. (Tr. 22).

The ALJ also placed little weight on the opinions of Moore, Pribyl, and Cox-Kolek. As to Moore, the ALJ found that she did not explain why Plaintiff could only work part-time. (Tr. 21). The ALJ further found that Moore's opinion was inconsistent with her prior statements, where she recommended that Plaintiff seek employment and where she noted

that Plaintiff was capable of pursuing activities in which he was interested. (Tr. 21). As to Pribyl and Cox-Kolek's opinions, the ALJ noted that those statements were made on forms for certain Minnesota assistance programs that had different disability standards, that neither person explained their conclusions, and that both opinions were inconsistent with statements in the record showing that Plaintiff "needed to work for the structure that it provides." (Tr. 21).

The ALJ did, however, place substantial weight on the conclusions of the state consultants. (Tr. 22). The ALJ explained that these opinions were consistent with the totality of the evidence in the record showing that Plaintiff was capable of working a job that was consistent with his residual functional capacity. (Tr. 22). The ALJ further stated that none of the evidence received into the record after the reconsideration decision would have altered the state consultants' opinions. The Court therefore turns to the factors found in 20 C.F.R. §§ 404.1527(c), 416.927(c). Because the parties focus primarily on two – the nature and length of the treating relationship and the consistency of the disputed opinion with other evidence, the Court focuses on those factors as well.

### 1. Examining and Treating Relationship

Though the ALJ did not identify expressly the nature and relationship of the treating relationship between Martens and Plaintiff, the ALJ did not ignore it entirely either. The ALJ found that Martens was Plaintiff's former psychotherapist and that Martens had seen Plaintiff as far back as 2005. (Tr. 21). Thus, implicit in the ALJ's analysis is the fact that Martens and Plaintiff had a lengthy treatment relationship, which is favorable when examining Martens's opinions.

In contrast, the state consultants who evaluated Plaintiff did so without examination. "The opinions of non-treating practitioners who have attempted to evaluate the claimant without examination do not normally constitute substantial evidence on the record as a whole." *Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003) (citing *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999)). Thus, this factor is unfavorable as it relates to the experts on which the ALJ relied in part to support his conclusions.

## 2.     Supportability and Consistency

The Court now turns to the supportability and consistency of the opinions. The ALJ discounted Martens's opinions based largely on the fact that they were inconsistent both internally with his own notes and with other evidence in the record as a whole. The ALJ also placed greater weight on the state consultant opinions because he found those opinions to be consistent with the totality of the evidence. The Court generally agrees with the ALJ's analysis.

First, the ALJ found the GAF scores contained in Martens's July 2014 report to be inconsistent with scores that Martens assigned Plaintiff in his treatment notes (Tr. 22, 450, 452) and with GAF scores assigned by other treatment providers. (Tr. 22, 507, 512, 518, 524, 530, 541, 553, 558, 608, 713). It is true that GAF scores have no direct correlation to the severity standard used by the Commissioner. *Reed v. Comm'r, Soc. Sec. Admin.*, 750 Fed. Appx. 506, 2019 WL 421739 *1 (8th Cir. Feb. 4, 2019) (per curiam). Those scores, as Plaintiff notes, represent "a snapshot in time" and cannot be used in isolation from the rest of the evidence to make a disability decision. *Vue v. Berryhill*, No. 17-cv-4110, 2018 WL 4054109 *3 n. 3 (D. Minn. Aug 24, 2018). Thus, the Court would be disinclined to

uphold the ALJ's decision had the ALJ relied only on GAF scores to find that Plaintiff was not disabled. It is not, however, improper for an ALJ to consider GAF scores when evaluating the credibility of the treating source opinion. *See Myers v. Colvin*, 721 F.3d 521, 525 (8th Cir. 2013) (noting that GAF scores may be considered in reviewing consistency between treating source opinion and the treatment record). In this case, the ALJ did not rely on GAF scores to reach a conclusion regarding Plaintiff's alleged disability. Instead, he used those scores to evaluate the credibility of Martens, ultimately finding that his opinion was less persuasive in part because the GAF scores in his opinion were inconsistent with his own treatment notes and the treatment notes of other providers. The Court concludes the ALJ's analysis regarding the GAF scores was not erroneous.

In addition, substantial evidence supports the ALJ's finding that Martens's April and July 2014 reports are inconsistent with the weight of the medical evidence as a whole. As described throughout, Plaintiff saw other providers who found him to be pleasant, easygoing, alert, orientated, and with clear and coherent speech. (Tr. 665, 667, 669, 671). Other counselors found that he displayed adequate grooming and hygiene. (Tr. 559, 598, 603, 614). In addition, the ALJ considered the fact that Plaintiff was able to take care of his dogs, interact with his family, locate employment as a dishwasher, and live on his own successfully for some time. The ALJ also considered the fact that Plaintiff exhibited good energy, attention, and concentration levels, as well as reasonable judgment levels. The ALJ therefore did not err in determining this evidence outweighed the conclusions that Martens reached in his reports.

Plaintiff cites to a number of instances throughout the record that he contends shows he is unable perform basic tasks without substantial assistance, as well as the fact that he struggled at times as a dishwasher at the Old Country Buffet. But the fact that the Court could draw two inconsistent conclusions from the record does not mean the ALJ's decision must be reversed. *Woolf*, 3 F.3d at 1213. Nor does that mean a particular finding is not supported by substantial evidence. *Thiele v. Astrue*, 856 F. Supp. 2d 1034, 1045 (D. Minn. 2012) (citing *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994)). The Court will not reverse the ALJ's decision based simply on the fact that Plaintiff is able to identify some evidence that would support his interpretation of the record as a whole. To do so would again require the Court to reweigh the evidence.

Plaintiff further contends that the ALJ did not give proper weight to the fact that Martens's opinion was consistent with those offered by Moore, Pribyl, and Cox-Kolek, each of whom noted that Plaintiff could not work full-time. This argument fails for several reasons. First, as discussed above, the ALJ considered each of those three opinions and explained why he assigned them little weight. Because the ALJ determined that those opinions offered little value, there was no reason for him to assess their consistency with other opinions that the ALJ also determined to be of little value. Second, Plaintiff identifies no reason why the ALJ's assessment of Moore, Pribyl, or Cox-Kolek's opinions was erroneous. As a result, the Court cannot determine what exactly Plaintiff is challenging with respect to those opinions. Absent such an argument, the Court will not second-guess the ALJ's decision not to consider those opinions in the context of the other evidence in the record. Undeveloped arguments such as this are waived. *Aulston v. Astrue*, 277 F.

App'x 663, 664–65 (8th Cir. 2008) (citing *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006)). Third, the opinions of Moore, Pribyl and Cox-Kolek that Plaintiff cites offer only the unsupported conclusion that Plaintiff cannot work full-time. (Tr. 714, 1133, 1134, 1136) That determination is left ultimately to the Commissioner; the ALJ and this Court cannot give those opinions any deference. *House*, 500 F.3d at 745. Finally, Moore's opinion is based in part on the fact that Plaintiff felt he was going to be let go from his previous position because he was not "fast enough or detailed enough." (Tr. 714). An ALJ is permitted to place less weight on opinions that are based on a claimant's self-reported limitations. *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007). For all of these reasons, the ALJ's decision to give little weight to the opinions of Moore, Pribyl, and Cox-Kolek is supported by substantial evidence.

Plaintiff next argues that the ALJ erred by placing substantial weight on the opinions of the state consultants, who did not examine him personally. Typically, such opinions are "entitled to little weight" when evaluating a claimant's disability, particularly when compared to a treating provider's opinion. *Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004). But when "better or more thorough medical evidence" exists, the ALJ may disregard the treating provider's opinion and place greater weight on that offered by the state consultants, so long as the ALJ gives reasons for his assessment and those reasons are supported by substantial evidence. *Smith v. Colvin*, 756 F.3d 621, 625-26 (8th Cir. 2014) (internal quotation marks omitted) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)).

The ALJ did so here. The ALJ explained that the state consultant opinions regarding Plaintiff's RFC were more consistent with the evidence in the record as a whole. This finding is supported by substantial evidence. The record shows that while employed by the Old Country Buffet, Plaintiff worked hard and was well-liked by his supervisor. The record further shows that Plaintiff's treatment providers found Plaintiff to be calm and stable when he took his medication, that his attention and concentration were intact, and that his thought process was logical and coherent. Finally, the record shows that Plaintiff performed chores and participated in both group and individual activities while living at Horizon Homes. The ALJ explained that Martens's opinion was entitled to little weight because it was inconsistent with this evidence. Plaintiff may disagree with the way that the ALJ went about evaluating the evidence. But because the ALJ's conclusions are supported by substantial evidence, this Court will not reweigh the evidence on review. *See Gonzales*, 465 F.3d at 894.

Plaintiff finally argues that the ALJ erred by placing substantial weight on the opinions of the state consultants because those consultants did not have the benefit of records created after the date of examination. He also contends that the ALJ substituted his own analysis of the medical data in place of the experts, suggesting instead that the ALJ should have arranged for a revised opinion from Martens, arranged for a consultative examination, or sent the entire file to back to the state for review. Neither argument has any merit.

An ALJ is required to obtain an updated opinion from a medical expert only if the ALJ is of the opinion that the additional medical evidence might change the consultant's

opinion. SSR 96-6p, 1996 WL 374180 (July 2, 1996). Likewise, an ALJ need not recontact medical sources or otherwise obtain a consultative evaluation unless the available evidence does not provide an adequate basis to determine the merits of the claim. 20 C.F.R. §§ 416.919a(b); 416.920b(b). The ALJ need not do so simply because he does not place substantial weight on the provider's opinion. *See Hacker v. Barnhart*, 459 F.3d 934, 938 (8th Cir. 2006) (noting that obligation exists only if treating physician opinion was "somehow incomplete"). In this case, the ALJ explained that he did not believe the newly received evidence would alter the state consultant's opinions regarding Plaintiff's RFC. This finding is supported by substantial evidence, in particular, the fact that Plaintiff obtained and worked successfully as a dishwasher for several months before his employer closed the restaurant. Treatment notes also indicate that Plaintiff's energy remained at good levels and that his judgment and attention levels remained fair. (Tr. 714, 718-19, 730-31, 735). The ALJ also determined that it was possible to reach a decision on the merits of Plaintiff's claim based on the evidence in the record. Against this background, Plaintiff identifies no good reason why the ALJ had an obligation to order additional consultation or testing.

Thus, when considering Plaintiff's mental impairments and their effect on Plaintiff's functioning, the ALJ found Plaintiff was capable of performing a full range of work at all exertional levels, but with limitations in noise, complexity in tasks, and interactions with coworkers and the general public. These findings are consistent with Plaintiff's abilities, as evidenced by his work history and his time living both on his own and at the Horizon Home program. Plaintiff is able to perform personal care needs, complete chores, and

participate in activities that he enjoys, including interacting with family and taking care of dogs. He maintains relationships with family members and is engaging and thoughtful when he meets with his health care providers. He was also able to work so effectively at the Old Country Buffet that his supervisor indicated that he wished he could clone Plaintiff. In short, Plaintiff's self-reported limitations are inconsistent with the medical opinions offered, undermining them. *Toland v. Colvin*, 761 F.3d 931, 936 (8th Cir. 2014). Put another way, the record contains ample evidence to support the ALJ's conclusion that Plaintiff is more capable than his former psychotherapist believes. *Id.*

The Court therefore concludes that the ALJ did not err in placing little weight on the opinion of Martens. The Court further concludes that the ALJ did not err in placing substantial weight on the opinions offered by the state consultants. The ALJ's evaluation of these opinions is supported by substantial evidence in the record. The Court will deny Plaintiff's motion for summary judgment and grant Defendant's motion.

[continued on next page]

## IV.    CONCLUSION

Based upon the record, memoranda, and proceedings herein, and for the reasons stated above, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment, (ECF No. 17), is **DENIED**; Defendant's Motion for Summary Judgment, (ECF No. 20), is **GRANTED**; and this matter is **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Date: March 28, 2019                                      *s/ Tony N. Leung*
                                                Tony N. Leung
                                                United States Magistrate Judge
                                                District of Minnesota

                                                *Michael S. v. Berryhill*
                                                Case No. 17-cv-5586 (TNL)